IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JONATHAN KRAFT,** ) <br> ) <br> *Plaintiff,* ) <br> ) <br> v. ) <br> ) <br> ) <br> **CHERE REXROAT, ACTING ARCHITECT** ) <br> **OF THE CAPITOL** ) <br> **United States Capitol Building** ) <br> **Washington, DC 20515,** ) <br> ) <br> Serve: ) <br> ) <br> **Chere, Rexroat, Acting Architect** ) <br> **of the Capitol** ) <br> **US Capitol Building** ) <br> **Washington, DC 20515,** ) <br> ) <br> **United States Attorney's Office** ) <br> **for the District of Columbia,** ) <br> **Attn: Civil Process Clerk** ) <br> **555 4th St., NW** ) <br> **Washington, DC 20530,** ) <br> ) <br> **Merrick B. Garland, Attorney General,** ) <br> **950 Pennsylvania Avenue, NW** ) <br> **Washington, DC 20530-0001,** ) <br> ) <br> *Defendants.* ) <br> ) | Case No. _____ |

**CIVIL COMPLAINT FOR EQUITABLE AND**
**MONETARY RELIEF AND DEMAND FOR JURY TRIAL**

Plaintiff Jonathan Kraft brings this complaint against Defendant the Architect of the

Capital (AOC), for violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), the

1

Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4311(a) ("USERRA"), as applied by the Congressional Accountability Act of 1995 ("CAA"), as amended by the CAA 1995 Reform Act of 2018. 2 U.S.C. § 1311 et seq., when it terminated Kraft.

## PARTIES

1. Claimant Jonathan Kraft is domiciled in Annandale, Virginia and was employed by the AOC as the chief financial officer.

2. Kraft is an "employee" as defined by 42 U.S.C. § 2000e and a "covered employee" pursuant to the CAA at 2 U.S.C. § 1301(3)(F).

3. Defendant AOC is the federal agency responsible for the maintenance, operation, development, and preservation of the United States Capitol Complex, with its headquarters located at SB-15 U.S. Capitol, U.S. Capitol Building, Washington, DC 20515.

4. The AOC is an "employer" as defined by 42 U.S.C. § 2000e and an "employing office" pursuant to the CAA at 2 U.S.C. § 1301(9)(D).

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it asserts claims that arise under the laws of the United States, specifically Title VII, USERRA, and ADEA.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because the Defendants' headquarters are in this judicial district and the alleged violations took place in this judicial district.

## FACTUAL ALLEGATIONS

7. Kraft is a 63-year-old white male residing in Annandale, VA.

8. Kraft served in the Army for 27 years, working mainly in financial roles, before retiring as a colonel.

9. Kraft started working for AOC in 2018 as a senior rated (SES) budget officer after working for approximately five and a half years as the budget officer at the U.S. Secret Service. The AOC appointed Kraft to the position of acting CFO in 2019 and then to the permanent position of CFO in 2020.

10. Kraft's direct supervisor as CFO was Brett Blanton, the Architect of the Capitol, and Kraft performed well at AOC and had no disciplinary record.

11. Kraft managed the budget process as a part of his role as CFO. This included drafting the budget itself and preparing Blanton for congressional hearings regarding the budget.

12. Kraft met on a regular basis with Blanton as well as Erin Courtney, the acting director of legislative affairs, in his capacity as CFO. As part of his CFO duties and responsibilities Kraft served as the Architect's principal spokesperson on financial matters before Congress, other agencies and the public and was in frequent communication with congressional staffers whose roles included providing funding appropriations for the AOC budget.

13. In November 2020, the AOC hired Christine Leonard as its director of legislative and public affairs (LPA).

14. The LPA s director position is influential as it allows for one person to manage both public communications as well as communications with staffers for the Senate Committee on Rules & Administration and the House Committee on House Administration, which typically make decisions for the AOC that the Architect usually must follow. The director of legislative and public affairs meets daily with the Architect.

Courtney onboarded Leonard as the outgoing acting director and then became her direct report, resuming her permanent position as public affairs officer until she resigned in February 2021.

15. Leonard asked Courtney during the onboarding process why the AOC employed so many military veterans. Courtney replied that the Office of Personnel Management favors veterans in the hiring process and that many military veterans possess the prerequisite skills for many AOC positions.

16. Leonard also asked Courtney about Kraft, including whether Courtney believed Kraft was mentally "with it." Courtney responded that Kraft occasionally neglected to add attachments to emails but that he was otherwise "with it." However, contrary to Courtney's implication that Kraft was somehow deficient in his duties, Kraft intentionally did not send certain documents to congressional oversight, at his discretion, as they were not ripe for review for Congress. Leonard then suggested that Courtney report Kraft to human resources, but Courtney declined to do so.

17. Leonard then told Courtney that she did not believe that Kraft had a positive working relationship with the appropriations staff members and that she wanted Kraft to stop speaking to them, implying that Kraft was intruding on her job.

18. Leonard regularly and critically pointed out to Courtney that she believed there were too many white male veterans in executive positions at the AOC after Courtney began reporting to Leonard.

19. Leonard also regularly complained to Mary Jean Pajak, the AOC's deputy chief of staff, about Kraft, AOC General Counsel Jason Baltimore, and AOC Chief Administrative

Officer Bill O'Donnell, criticizing their use of military language and opining that they engaged in "mansplaining" during work meetings.

20. Leonard subsequently asked Blanton to terminate Kraft in a meeting with Chief of Staff Pete Bahm and Blanton, but Blanton refused.

21. Dr. Carla Hayden is the librarian for the Library of Congress ("LOC"), and she commenced a project to renovate the LOC's Thomas Jefferson building. The project was entirely funded under LOC, and the LOC contracted with AOC for much of the planning, design and construction work, and paid the AOC out of the LOC's budget. Soon the project was over budget, and Senate Appropriations members confided to senior AOC members that they did not want the budget over-runs to reflect as political baggage for Dr. Hayden. Accordingly, they advised that they wanted to add additional funds to the AOC's fiscal year budget for 2024 to cover the LOC's funding shortfall.

22. In an executive meeting concerning the LOC's project, Kraft explained to Leonard and other members of the executive staff that he did not believe the AOC should assume a larger budget to obfuscate and compensate for the LOC's overspending and arrearage. Kraft opined that he believed it was not in the AOC's best interest to assume financial responsibility for other agency's spending projects and that doing so would negatively impact the AOC's budget. In this meeting, Kraft's position was supported by the acting chief engineer and the superintendent of the AOC Library Buildings and Grounds Jurisdiction. Leonard responded in a hostile and infuriated manner, declaring "How dare you take that position after all Dr. Hayden has done as a woman of color to expand accessibility?!"

23. On or about February 13, 2023, Leonard asked Bahm to advise her as to which AOC employment positions served "at will" as opposed to being civil service. Bahm responded

that all AOC executives served at the pleasure of the Architect. This conversation occurred while Leonard was answering questions from Senate Rules staff member Nichole Kotchwar.

24. On February 13, 2023, President Joe Biden fired Blanton over a series of ethical violations involving impersonating a police officer, appropriating a public vehicle for private purposes, giving private tours of the Capitol, among other violations. Kraft had no advance knowledge of these allegations and learned about them at the same time as the public.

25. Chere Rexroat, the chief engineer, was named acting architect in or about March 2023.

26. On March 3, 2023, the Office of Inspector General published a memo stating that 17 AOC employees received knowledge of Blanton's violations from the General Services Administration but failed to notify the Office of the Inspector General, Kraft was not implicated in this report.

27. On or about April 6, 2023, Rexroat advised Kraft that she was terminating his employment, effective immediately. Rexroat told Kraft that she could not tell him why she was doing so and that she did not need a reason because Kraft served at the pleasure of the Architect. Rexroat had also fired Bahm, O'Donnell, and Baltimore that same day.

28. Rexroat terminated all four of the executive-level, veteran men members of the AOC C-Suite. Three out of the four men are white, all four are veterans, and all are over 40 years old. The remaining four female executives were not terminated, including chief security officer Val Hasberry, who had been implicated in the March 2023 OIG report.

29. Later that day, a reporter for The Hill contacted Kraft for a comment on the articles they were about to publish about Kraft's termination. The reporters advised that they were supplied a draft email that Rexroat would send to all AOC staff following the terminations.

The email implied that Kraft, Bahm, O'Donnell, and Baltimore were implicated in Blanton's wrongdoing and jeopardized the AOC's accountability in partnership with Congress.

30. The AOC's public affairs office, headed by Leonard, leaked the email to the press before it was even sent out to its intended recipients.

31. Because of the leaked internal email falsely implicating Kraft in Blanton's wrongdoing, The Hill and Roll Call published articles on April 7, 2023, implying the same thing, unwittingly publishing false information and gravely damaging Kraft's career and reputation.

32. On or about April 27, 2023, Kraft received his SF-50 reflecting his termination, and the AOC reported that it terminated Kraft due to misconduct.

33. Because of the falsity of the statement the AOC made in his SF-50, Kraft requested that AOC change his SF-50 to remove the misconduct allegation, which it eventually did on or about May 10, 2023, after being confronted by Kraft.

34. As the result of AOC's illegal actions, Kraft sustained mental anguish and economic damages, and he will continue to sustain damages into the future.

## COUNT I
## Discrimination Based on Race
## Title VII of the Civil Rights Act of 1964
## 2 U.S.C. § 1311

35. Kraft hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

36. Kraft is an "employee" as defined in 42 U.S.C. § 2000e(f) (Title VII).

37. Kraft is a "covered employee" pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1301(3)(F) and 2 U.S.C. § 1301(4).

38. The AOC is an "employer" as defined by 42 U.S.C. § 2000e (Title VII).

39. The AOC is an "employing office" pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1301(9)(D).

40. The AOC violated Title VII, as incorporated with respect to the AOC by the Congressional Accountability Act (CAA), by discriminating against Kraft, based on his race, when it terminated his employment on April 6, 2023.

41. The AOC's stated reasons for terminating Kraft are pretext for its unlawful race discrimination.

42. Kraft sustained substantial monetary and non-monetary damages as the result of the AOC's conduct.

**COUNT II**
**Discrimination Based on Race**
**Title VII of the Civil Rights Act of 1964**
**2 U.S.C. § 1311**

43. Kraft hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

44. Kraft is an "employee" as defined in 42 U.S.C. § 2000e(f) (Title VII).

45. Kraft is a "covered employee" pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1301(3)(F) and 2 U.S.C. § 1301(4).

46. The AOC is an "employer" as defined by 42 U.S.C. § 2000e (Title VII).

47. The AOC is an "employing office" pursuant to the Congressional Accountability Act of 1995, 2 U.S.C. § 1301(9)(D).

48. The AOC violated Title VII, as incorporated with respect to the AOC by the Congressional Accountability Act (CAA), by discriminating against Kraft, based on his sex, when it terminated his employment on April 6, 2023.

49. The AOC's stated reasons for terminating Kraft are pretext for its unlawful sex discrimination.

50. Kraft sustained substantial monetary and non-monetary damages as the result of the AOC's conduct.

## COUNT III
## USERRA
## 38 U.S.C. § 4311(a)
## Discrimination

51. Kraft hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

52. Kraft performed service in the United States Army.

53. AOC was motivated by the fact that he had served in the United States Army when it terminated his employment.

54. Kraft lost a benefit of employment when AOC removed him from federal service.

55. Kraft's former membership in a uniformed service of the United States was a substantial or motivating factor in AOC's decision to remove Kraft.

56. Kraft sustained substantial monetary and non-monetary damages as the result of the AOC's conduct.

## COUNT IV
## The Age Discrimination in Employment Act 29 U.S.C. §§ 621 et seq.
## Discrimination

57. Kraft hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

58. Kraft is over 40 years old.

59. The ADEA makes it unlawful for an employer "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1).

60. AOC's decision to remove Kraft was based on his age.

61. AOC's stated reasons for its action are pretextual.

62. Kraft sustained substantial monetary and non-monetary damages as the result of the AOC's conduct.

## **PRAYER FOR RELIEF**

Based on the foregoing, Kraft respectfully requests that he be awarded the following relief against the AOC:

a. Reinstatement or, in lieu thereof, full front pay and benefits;

b. Economic damages for lost compensation and benefits and damages to Kraft's career, reputation, and earning capacity in an amount to be determined;

c. Compensatory damages, including but not limited to pain and suffering, emotional distress and reputational damage;

d. Injunctive and declaratory relief;

e. Reasonable costs and experts' and attorneys' fees; and

f. Any other such relief that a court may deem just and equitable.

Respectfully submitted,

R. Scott Oswald, D.C. Bar No. 458859
Anita Mazumdar Chambers, D.C. Bar No.  1046845
The Employment Law Group, P.C.
1717 K St NW, NW, STE 1110
Washington, DC  20006
(202) 261-2821
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
achambers@employmentlawgroup.com
*Counsel for Jonathan Kraft*